U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2019 OCT 31 AM 9: 22

CLERK

BY [signature]
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MICHAEL BANDLER, )
)
Plaintiff, )
)
v. ) Case No. 2:18-cv-00128
)
TOWN OF WOODSTOCK, )
VILLAGE OF WOODSTOCK, )
STATE OF VERMONT, and )
JOHN DOES 1-300, )
)
Defendants. )

## OPINION AND ORDER
## DENYING PLAINTIFF'S MOTION FOR LEAVE TO AMEND
(Doc. 33)

Plaintiff Michael Bandler brings this action on behalf of himself and all other similarly situated persons against the Town of Woodstock (the "Town"), the Village of Woodstock (the "Village"),[1] the State of Vermont (the "State"), and John Doe Defendants who are "in privy with the named Defendants" (collectively, "Defendants"). (Doc. 9 at 2, ¶ 6.) Plaintiff seeks to assert four claims arising out of a traffic citation he was issued on June 20, 2015 in the Village: (1) the Village ordinance authorizing the citation is void for vagueness; (2) the relevant speed limit sign in the Village was illegal and violated Plaintiff's due process rights under the Fourteenth Amendment and the Vermont Constitution; (3) citations issued pursuant to 23 V.S.A. § 1007 are illegal and violate Plaintiff's and putative class members' due process rights; and (4) Defendants Town, Village, and proposed new defendants Philip B. Swanson, Robbie Blish, and Candace Coburn committed civil rights violations under 42 U.S.C. § 1983 based on the

---

[1] At times, Plaintiff's proposed Amended Complaint refers to "Woodstock" without differentiating between the Town and the Village. The court treats this as a collective reference to them both.

lack of sufficient notice they provided to motorists regarding the legal basis for speeding violations.

On March 28, 2019, the court dismissed Plaintiff's Complaint, concluding Plaintiff lacked standing to pursue his claims. Pending before the court is Plaintiff's motion for leave to amend. (Doc. 33.) Defendants oppose the motion, arguing that Plaintiff's proposed amendments are futile because they do not cure the defects in Plaintiff's initial Complaint.

Plaintiff is represented by Eric K. Goldwarg, Esq. and P. Scott McGee III, Esq. The Village and Town are represented by Kaveh S. Shahi, Esq. Vermont Assistant Attorney General David R. McLean represents the State.

## I. The Allegations of the Proposed Amended Complaint.

On June 20, 2015, Plaintiff was driving west on U.S. Route 4, a "state highway" as defined in 19 V.S.A. § 14 and passed through the Town before crossing into the Village where a sign indicated a posted speed limit of twenty-five miles per hour. A Town police officer executed a traffic stop of Plaintiff's vehicle for driving over the posted speed limit. In the course of the stop, the Town police officer issued Plaintiff a citation (the "Citation") for violating 23 V.S.A. § 1007, which, among other things, authorizes Vermont municipalities to establish "a speed limit on all or a part of any city, town, or village highway within [their] jurisdiction[.]" *Id.* at § 1007(a)(1).[2] Plaintiff was cited

---

[2] 23 V.S.A. § 1007(a)(1) states:

(a)(1) The legislative body of a municipality may establish, on the basis of an engineering and traffic investigation, a speed limit on all or a part of any city, town, or village highway within its jurisdiction, which:

(A) is not more than 50 miles per hour; however, after considering neighborhood character, abutting land use, bicycle and pedestrian use, and physical characteristics of the highways, the legislative body of a municipality may vote to set the maximum speed limit, without an engineering and traffic investigation, at not more than 50 miles per hour nor less than 35 miles per hour, on all or a portion of unpaved town highways within its boundaries, unless otherwise posted in accordance with the provisions of this section; or

(B) is not less than 25 miles per hour.

2

with traveling forty miles per hour in a twenty-five mile per hour zone. The Citation referenced 23 V.S.A. § 1007 but did not refer to the applicable subsection of that statute or the Village's speed limit ordinance, 8 W.V.O. § 8221 (the "Ordinance").

Plaintiff challenged the Citation in the Vermont Judicial Bureau. The hearing officer found Plaintiff guilty of speeding and entered judgment against him. Plaintiff appealed that decision to the Vermont Superior Court and demanded a *de novo* jury trial. On June 2, 2016, the morning of the jury trial, the Windsor County Deputy State's Attorney informed the Vermont Superior Court that the State was dismissing the Citation because of a defect in the Ordinance.

Plaintiff alleges the Citation's lack of reference to the Ordinance "prevented him from preparing an adequate defense at the Vermont Judicial Bureau hearing," where he would have "likely prevailed." (Doc. 33-1 at 9, ¶ 55.) He further asserts that his "due process rights were violated by not receiving a citation to the particular subsection and the applicable Ordinance he was alleged to have violated. Because of this violation of [his] due process rights, [he] incurred $120 in appellate court fees and countless wasted hours." *Id.* at 9-10, ¶ 55.

At the time the Citation was issued, Plaintiff alleges that the Ordinance provided in relevant part that:

> (a) No person shall drive a vehicle at any time on any public roadway in the Village at a speed in excess of twenty-five miles per hour.
>
> (b) The Chief of Police shall erect and maintain signs . . . giving notice of the maximum speed limit established under subsection (a) of this section.
>
> . . .
>
> (d) No person shall drive a vehicle at a speed greater than 35 MPH, on Route 4, from the Westerly terminus at the Fire Station, easterly to the Village boundary.

*Id.* at 4-5, ¶ 21.

Plaintiff asserts that the Ordinance was "defective" because subsection (a) established a speed limit of twenty-five miles per hour throughout the entire Village, whereas subsection (d) imposed a speed limit of thirty-five miles per hour on the portion

3

of Route 4 in the Village where Plaintiff was stopped. *Id.* at 5, ¶ 23. He alleges that at the time he was stopped, he was "traveling at or below 35 mph, which is below the 35 mph speed limit set forth in subsection (d) of the [O]rdinance," *id.* at 5, ¶ 26, and that after the Citation was dismissed, the Village struck subsection (d) from the Ordinance.

Plaintiff further alleges that "[u]pon information and belief, in 2017 alone, 765 traffic tickets were issued in the Town[,]" *id.* at 6, ¶ 32, and that "tens of thousands" of speeding tickets "were illegally and unconstitutionally issued" by the Town and Village since the Ordinance was enacted in 1993. (Doc. 33-1 at 6, ¶ 35.) On behalf of all motorists who received citations based on the Ordinance, Plaintiff seeks refunds of their fines, as well as recovery for the collateral consequences they suffered as a result of the purportedly illegal citations. He contends that many of the traffics stops may have created probable cause for investigating police officers to expand the stops into searches, and that all of the criminal charges grounded on the illegal traffic stops must be vacated. Plaintiff seeks certification of a class of those individuals who were the subject of allegedly illegal stops under Fed. R. Civ. P. 23.

Plaintiff alleges that the Village is liable because it passed the defective Ordinance, and that the Town is liable because it is part of the Village and its police officers "likely" issued most of the putative class members' tickets. *Id.* at 7, ¶ 41. He contends that the State is equally liable "because of its revenue-sharing arrangement with local municipalities that issue uniform civil violation complaints." *Id.* at 7, ¶ 42. In addition, Plaintiff asserts that an unnamed group of "John Doe Defendants" are liable to him and the proposed class members for "continu[ing] to issue traffic tickets that cite to 23 V.S.A. § 1007 but do not reference the particular subsection . . . or to the local ordinance that the motorist is alleged to have violated." *Id.* at 11, ¶ 61.

In his proposed Amended Complaint, Plaintiff seeks to add four new defendants: (1) Defendant Philip B. Swanson ("Defendant Swanson"), the Town and Village's Municipal Manager, whom Plaintiff alleges is liable as a result of his duty to ensure the validity of the Town and Village ordinances; (2) Defendant Robbie Blish ("Defendant Blish"), the Town and Village's Chief of Police, who is allegedly liable due to his duty to

4

properly train his officers to enforce valid Town and Village ordinances and properly cite individuals for violations thereunder; (3) Defendant Candance Coburn ("Defendant Coburn"), the Town and Village's Treasurer, whose alleged liability stems from her responsibility to accept revenues for the Town and Village; and (4) Defendant Beth Pearce ("Defendant Pearce"), the State Treasurer, who is allegedly liable because she, like Defendant Coburn, "had the responsibility to accept revenues for . . . the State of Vermont . . . from legal sources, including, but not limited to, revenues from legally issued speeding citations." *Id.* at 8, ¶ 45.

## II. Conclusions of Law and Analysis.

### A. Standard of Review.

Fed. R. Civ. P. 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2).[3] "The rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Pasternack v. Shrader*, 863 F.3d 162, 174 (2d Cir. 2017) (citation and internal quotation marks omitted); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits."). "Generally, a district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party." *Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009) (alteration, citation, and internal quotation marks omitted).

"A proposed amendment to a complaint is futile when it 'could not withstand a motion to dismiss.'" *Balintulo v. Ford Motor Co.*, 796 F.3d 160, 164-65 (2d Cir. 2015)

---

[3] "To the extent a proposed amendment would add new parties, the motion [for leave to amend] is technically governed by Rule 21, which provides that 'the court may at any time, on just terms, add or drop a party,' rather than Rule 15(a)." *Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 96 (S.D.N.Y. 2010) (quoting Fed. R. Civ. P. 21). The "same standard of liberality" applies to a Rule 21 motion as it does to a Rule 15 motion. *Id.* at 96-97 (quoting *FTD Corp. v. Banker's Tr. Co.*, 954 F. Supp. 106, 109 (S.D.N.Y 1997)).

(quoting *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002)). For this reason, leave to amend will be denied if the proposed pleading fails to set forth "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation and internal quotation marks omitted). The sufficiency of a plaintiff's complaint is evaluated using a "two-pronged approach[.]" *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679). First, the court discounts legal conclusions or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements[.]" *Iqbal*, 556 U.S. at 678. Second, the court considers whether the factual allegations, taken as true, "plausibly give rise to an entitlement to relief." *Id.* at 679. This second step is fact-bound and context-specific, requiring the trial court "to draw on its judicial experience and common sense." *Id.* The court does not "weigh the evidence" or "evaluate the likelihood" that a plaintiff will prevail on his or her claims. *Christiansen v. Omnicom Grp., Inc.*, 852 F.3d 195, 201 (2d Cir. 2017); *see also Kardovich v. Pfizer, Inc.*, 97 F. Supp. 3d 131, 140 (E.D.N.Y. 2015) ("[I]ssues of fact, credibility, and the weight of the evidence are not properly considered on a motion to dismiss[.]").

**B.  Whether Leave to Amend Should Be Denied Because Plaintiff "Hedged His Bets" By Waiting to Amend Until After the Court Issued Its Opinion on Defendants' Motions to Dismiss.**

The Town and Village argue that Plaintiff may not "hedge his bet[s]" (Doc. 35 at 1) and cause undue delay by waiting for the court to rule on a motion to dismiss and amend his Complaint thereafter.[4] They point out that Plaintiff knew the operative facts

---

[4] *See In re Nokia Oyj (Nokia Corp.) Sec. Litig.*, 423 F. Supp. 2d 364, 409 (S.D.N.Y. 2006) (finding that plaintiffs cannot "'hedge their bets' by holding [new] evidence back in the hopes of having another bite of the proverbial apple" while waiting for a ruling on a motion to dismiss); *Cinema Vill. Cinemart, Inc. v. Regal Entm't Grp.*, 2016 WL 5719790, at *8 (S.D.N.Y. Sept. 29, 2016) (same). District courts have discretion to find that plaintiffs act in "bad faith" by "waiting to see how [they] would fare on the prior motion to dismiss" even though the "purportedly 'new' information was within plaintiffs' knowledge before argument on the motion to dismiss." *In re Merrill Lynch & Co.*, 273 F. Supp. 2d 351, 391 (S.D.N.Y. 2003), *aff'd on other grounds sub. nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) (quoting *Vine v. Beneficial Fin. Co.*, 374 F.2d 627, 636-37 (2d Cir. 1967)). Courts find undue delay on this basis when a plaintiff has amended his or her complaint more than once. *See, e.g., In re Nokia Corp.*, 423 F.

6

when he filed his initial Complaint and has now added facts that should have been included previously, such as allegations that he was traveling at or below thirty-five miles per hour when stopped and that he paid $120 to appeal the decision of the Vermont Judicial Bureau to the Vermont Superior Court. Plaintiff responds that he did not withhold facts from his original Complaint but "simply revised his complaint to better explain to the court and defendants why he has standing to bring the claims and why he expects to prevail on the merits." (Doc. 36 at 2.) Plaintiff also contends that he has not caused undue delay because "this litigation is in its infancy." *Id.* at 3.

"Mere delay . . . absent a showing of bad faith or undue prejudice [] does not provide a basis for a district court to deny the right to amend." *State Teachers Ret. Bd. v. Fluor Corp.*, 654 F.2d 843, 856 (2d Cir. 1981). In general, "the longer the period of an unexplained delay, the less will be required of the nonmoving party in terms of a showing of prejudice." *Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993) (citation omitted). A party is "prejudiced" if the proposed amendments would "(i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; (ii) significantly delay the resolution of the dispute; or (iii) prevent the plaintiff from bringing a timely action in another jurisdiction." *Pasternack*, 863 F.3d at 174.

Where "essentially no discovery has been undertaken," a proposed amended complaint "would be the first complaint to be considered after the district court decided a motion to dismiss[,] and it does not appear that there is any allegation of untimeliness based on a scheduling order[,] . . . amendment should not be precluded on the ground of untimeliness." *Id.* Here, no discovery has taken place, Plaintiff's proposed Amended Complaint would be the first complaint to be considered after the court's ruling on Defendants' motions to dismiss, and Plaintiff sought leave to amend by the court-imposed deadline. Although Plaintiff may have in some respects "hedged his bets," there is no evidence that he did so in bad faith or for strategic purposes. The court therefore does not deny Plaintiff leave to amend on the basis of undue delay.

---

Supp. 2d at 409 (denying plaintiffs leave to amend "especially after already amending the [complaint] once").

## C. Whether Plaintiff's Proposed Amended Complaint Establishes Standing to Bring Suit.

Under Article III of the United States Constitution, the jurisdiction of federal courts is limited to the resolution of "[c]ases" and "[c]ontroversies[.]" U.S. CONST. art. III, § 2. "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Id.* On a motion to dismiss for lack of subject matter jurisdiction, "the defendant may challenge either the legal or factual sufficiency of the plaintiff's assertion of jurisdiction, or both." *Robinson v. Gov't of Malaysia*, 269 F.3d 133, 140 (2d Cir. 2001). "In order to ensure that this bedrock case-or-controversy requirement is met, courts require that plaintiffs establish their standing as the proper parties to bring suit." *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (alteration and citation omitted).

To invoke the jurisdiction of the federal courts, Plaintiff "must clearly allege facts demonstrating each element" of Article III standing. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (alteration and internal quotation marks omitted). "[T]he irreducible constitutional minimum of standing contains three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). First, the plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) actual or imminent, not conjectural or hypothetical." *Id.* (citations and internal quotation marks omitted). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." *Id.* at 560-61 (citations, alterations, and internal quotation marks omitted). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (citation and internal quotation marks omitted).

8

Because "[t]he standing inquiry focuses on whether the plaintiff is the proper party to bring . . . suit," the injury analysis "often turns on the nature and source of the claim asserted." *Raines v. Byrd*, 521 U.S. 811, 818 (1997) (citation and internal quotation marks omitted). "[I]n evaluating whether the alleged injury is concrete and particularized, [courts] assess whether the injury affect[s] the plaintiff in a personal and individual way[.]" *Baur v. Veneman*, 352 F.3d 625, 632 (2d Cir. 2003) (citation omitted). "A 'concrete' injury must be '*de facto*'; that is, it must actually exist." *Spokeo*, 136 S. Ct. at 1548. A plaintiff cannot satisfy the demands of Article III by "alleg[ing] a bare procedural violation, divorced from any concrete harm[.]" *Id.* at 1549. "Similarly, to support standing, the plaintiff's injury must be actual or imminent to ensure that the court avoids deciding a purely hypothetical case in which the projected harm may ultimately fail to occur." *Baur*, 352 F.3d at 632.

To have standing to bring a class action suit, "with respect to each asserted claim against each defendant, a plaintiff must always have suffered a distinct and palpable injury to [him]self." *Langan v. Johnson & Johnson Consumer Cos.*, 897 F.3d 88, 94 (2d Cir. 2018) (citation and internal quotation marks omitted). "[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class." *O'Shea v. Littleton*, 414 U.S. 488, 494-95 (1974) (footnote omitted); *see also Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007) ("[O]ne of the named Plaintiffs is required to establish standing in order to seek relief on behalf of the entire class."); *Denney v. Deutsche Bank AG*, 443 F.3d 253, 264 (2d Cir. 2006) ("[N]o class may be certified that contains members lacking Article III standing.") (citing cases).

In support of his proposed Amended Complaint, Plaintiff contends his standing is established by the following facts:

> [T]he Amended Complaint makes clear that the actual speed limit on the subject section of road was 35 mph, yet the posted speed limit was 25 mph. [Plaintiff's] cited speed of 40 mph was never adjudicated. By pleading that his actual speed [was] less than 35 mph, [Plaintiff] alleges that he fully

9

> complied with the actual speed limit. . . . Accepting as true that [Plaintiff] traveled below the actual speed limit, he suffered an injury in fact by receiving a citation for traveling at a speed that was permitted under the applicable Village Ordinance.

(Doc. 36 at 4.)

Crediting Plaintiff's revised factual allegations as true, the Citation has been dismissed and the proposed Amended Complaint identifies no harm or damages Plaintiff continues to suffer as a result of the allegedly illegal traffic stop. Although Plaintiff asserts he incurred an appellate court filing fee of $120, his further claim that he "wasted countless hours" is unaccompanied by any authority that would empower the finder of fact to compensate Plaintiff for this loss of time. *See Lujan*, 504 U.S. at 561 (holding to have standing, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision") (citation and internal quotation marks omitted).

To the extent Plaintiff alleges he suffered an injury-in-fact because he was required to pay the $120 filing fee in order to appeal the Vermont Judicial Bureau's decision to the Vermont Superior Court, the Town and Village point to 32 V.S.A. § 1471(a), which provides: "There shall be taxed in the bill of costs to the recovering party in the Supreme and Superior Courts or the Judicial Bureau a fee equal to the entry fees, the cost of service fees incurred, and the total amount of the certificate of witness fees paid." In his reply, Plaintiff notes that "it is not clear whether [he] is the 'recovering party' because the Superior Court did not adjudicate the merits of his appeal." (Doc. 36 at 4.) However, the Vermont Supreme Court decided that issue in *State v. Ramsay*, 2003 WL 25744779 (Vt. Aug. 1, 2003), in an unpublished Entry Order.

In *Ramsay*, the defendant appealed his conviction in the Vermont Judicial Bureau asserting that his traffic citation was unconstitutional. The Orange County Deputy State's Attorney dismissed the charge against the defendant, and the defendant thereafter sought a refund of his filing fee under 32 V.S.A. § 1471. The district court denied the request without an opinion. The defendant appealed to the Vermont Supreme Court, arguing "that 32 V.S.A. § 1471 and federal due process requirements compel the court to tax the prevailing party's costs against the opposing party." *Id.* at *1. The State advised

10

the Vermont Supreme Court that it "would not be filing an opposing brief because it agreed with Ramsay's analysis." *Id.* Citing § 1471 and Vt. R. Civ. P. 54(d)(1),[5] the Vermont Supreme Court held that "[c]onsidering the explicit statutory basis grounding [the defendant]'s claim," the case must reversed and remanded to the district court "for consideration of Ramsay's claim in light of the State's concession." *Ramsay*, 2003 WL 25744779, at *2.

Under 32 V.S.A. § 1471, Vt. R. Civ. P. 54(d)(1), and *State v. Ramsay*, Plaintiff could have obtained reimbursement of his $120 filing fee in the Vermont Superior Court after his case was dismissed because he was the prevailing party. His failure to do so negates his standing because a self-inflicted harm is not a *de facto* injury, *see Nat. Res. Def. Council, Inc. v. U.S. Food & Drug Admin.*, 710 F.3d 71, 85 (2d Cir. 2013) ("[A] plaintiff may not establish injury for standing purposes based on a 'self-inflicted' injury"), where a plaintiff can recover a filing fee through "easy means" but "declined the opportunity." *Taylor v. Fed. Aviation Admin.*, 2019 WL 3767512, at *4 (D.D.C. Aug. 9, 2019) (holding that loss of $5.00 registration fee that plaintiff could have easily recovered from the Federal Aviation Administration did not establish standing) (citation omitted). "As the [Plaintiff] has *chosen* to remain in the lurch, [he] cannot demonstrate an injury sufficient to confer standing." *Nat'l Family Planning & Reprod. Health Ass'n, Inc. v. Gonzales*, 468 F.3d 826, 831 (D.C. Cir. 2006) (emphasis in original); *see also Nat. Res. Def. Council, Inc.*, 710 F.3d at 85 ("An injury is self-inflicted so as to defeat the causation necessary to establish standing . . . 'if the injury is so completely due to the plaintiff's own fault as to break the causal chain.'") (alteration omitted) (quoting *St. Pierre v. Dyer*, 208 F.3d 394, 402 (2d Cir. 2000)). Based on the filing fee alone, Plaintiff's injury is not an injury-in-fact traceable to each Defendant. *See Lujan*, 504 U.S. at 560-61 (ruling that standing requires "the injury . . . to be fairly traceable to the

---

[5] Vt. R. Civ. P. 54(d)(1) states: "Costs other than attorneys' fees shall be allowed as of course to the prevailing party, as provided by statute and by these rules, unless the court otherwise specifically directs. Costs shall be taxed against the State of Vermont only to the extent permitted by law."

11

challenged action of the defendant, and not the result of the independent action of some third party not before the court") (citations, alterations, and internal quotation marks omitted).

To the extent Plaintiff grounds his standing on a due process violation, "[a] procedural due process claim requires proof of two elements: '(1) the existence of a property or liberty interest that was deprived and (2) deprivation of that interest without due process.'" *Cyr v. Addison Rutland Supervisory Union*, 955 F. Supp. 2d 290, 295 (D. Vt. 2013) (quoting *Bryant v. N.Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012)). The only property interest that Plaintiff alleges he was deprived of is the $120 filing fee. He does not plausibly allege that he was deprived of that filing fee without due process because he concedes he obtained a decision from the Vermont Judicial Bureau as well as appellate review, resulting in the dismissal of the Citation. He identifies no other process that was due. *See Edelman v. N.Y. State Dep't of Motor Vehicles*, 1997 WL 1068704, at *2 (E.D.N.Y. Sept. 5, 1997) ("Plaintiff's own allegations, as set forth in the complaint, make clear that he had a full and fair opportunity to be heard."). Plaintiff's claim that he could not prepare an adequate defense in the Vermont Judicial Bureau because of the Citation's vagueness fails for different reasons.

The Citation referenced 23 V.S.A. § 1007, which provides: "[t]he legislative body of a municipality may establish . . . a speed limit on all or a part of any city, town, or village highway within its jurisdiction[.]" In this manner, the statute advised Plaintiff that he could be charged with violating a speed limit set by a municipality. The Citation itself referenced the alleged posted speed limit; Plaintiff's alleged speed in that zone; the date, time, and location of the traffic stop; the statute Plaintiff allegedly violated; the identity of the police officer who issued the ticket; and the officer's narrative of the events. Plaintiff does not plausibly allege that this information was insufficient to formulate a defense. *See Sira v. Morton*, 380 F.3d 57, 73 (2d Cir. 2004) ("We have frequently upheld indictments that do little more than track the language of the statute charged . . . when they also state, at least approximately, the time and place of the alleged crime.") (citation and alterations omitted); *Knutson v. Vill. of Lakemoor*, 932 F.3d 572,

12

576 (7th Cir. 2019) (holding that the reference in notices for failing to stop for a red light to the parallel session law of a town ordinance, without citing to the specific subsection of a town's municipal code, did not violate plaintiffs' due process rights because "[t]hey received a written notice of each violation, which included a description . . . of the violation as well as the time, date, and location where it occurred," and "[t]hey also had an opportunity to contest the violation"). Plaintiff has therefore failed to plausibly allege he was denied a constitutional right because of the vagueness of either the Ordinance or the Citation. *See Isler v. N.M. Activities Ass'n*, 2013 WL 12328907, at *3 (D.N.M. Sept. 25, 2013) ("Plaintiff's ability to raise his vagueness claim . . . is compromised by his inability to establish . . . an 'injury in fact.' Specifically, Plaintiff has not set forth specific facts that, if proved, would establish that he suffered an invasion of a legally protected interest as a result of the vagueness of the Bylaw.").

To the extent Plaintiff asserts he has standing against the Town, Village, and John Doe Defendants because they "continue to issue traffic tickets that cite to 23 V.S.A. § 1007 but do not reference the particular subsection of § 1007 or to the local ordinance that the motorist is alleged to have violated[,]" (Doc. 33-1 at 11, ¶ 61), Plaintiff cannot rely on harms inflicted on third parties not before the court. *See Kowalski v. Tesmer*, 543 U.S. 125, 129 (2004) ("[A] party 'generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)); *Singleton v. Wulff*, 428 U.S. 106, 114 (1976) ("Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.") (citation omitted). He does not claim that the two exceptions to this rule—"whether the party asserting the right has a 'close' relationship with the person who possess the right" and "whether there is a 'hindrance' to the possessor's ability to protect his own interests"—apply in this case. *Kowalski*, 543 U.S. at 130.[6]

---

[6] *See Kowalski v. Tesmer*, 543 U.S. 125, 130-32 (2004) (holding attorneys lacked standing to represent an unknown class of criminal defendants challenging the constitutionality of a Michigan statute prohibiting the appointment of appellate counsel, where the attorneys did not

13

Plaintiff's requests for declaratory and injunctive relief do not constitute separate claims because "[d]eclaratory judgments and injunctions are remedies, not causes of action." *Chiste v. Hotels.com L.P.*, 756 F. Supp. 2d 382, 406 (S.D.N.Y. 2010); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Karp*, 108 F.3d 17, 21 (2d Cir. 1997) ("The [Declaratory Judgment Act] is procedural in nature, and merely offers an *additional remedy* to litigants.") (emphasis in original). In any event, "[a] plaintiff seeking injunctive or declaratory relief cannot rely on past injury to satisfy the injury requirement but must show a likelihood that he or she will be injured in the future." *Deshawn E. by Charlotte E. v. Safir*, 156 F.3d 340, 344 (2d Cir. 1998). In other words, Plaintiff "must carry the burden of establishing that 'he has sustained or is immediately in danger of sustaining some direct injury as the result of the challenged official conduct.'" *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004) (quoting *City of L.A. v. Lyons*, 461 U.S. 95, 101-02 (1983)). In light of Plaintiff's concession that the Ordinance has been revised, the possibility of an illegal citation thereunder has been foreclosed. Although Plaintiff conjectures that law enforcement may continue to rely on the previous version of the Ordinance or similar ordinances in other towns, this is "too speculative for Article III purposes." *Lujan*, 504 U.S. at 564 n.2; *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990) ("Allegations of possible future injury do not satisfy the requirements of Art. III. A threatened injury must be 'certainly impending' to constitute injury in fact.") (citation omitted); *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 414 (2013) ("We decline to abandon our usual reluctance to endorse standing theories that rest on speculation about the decisions of independent actors."); *Hunt v. City of L.A.*, 601 F. Supp. 2d 1158, 1167 (C.D. Cal. 2009) (holding in suit challenging statute as void for vagueness that "[b]ecause both of the challenged statutes ha[ve] been superseded, Plaintiffs' claims for injunctive relief are moot").

---

have an existing relationship with the proposed class of clients, and lack of representation in challenging the constitutionality of the scheme was not "the type of hindrance necessary to allow another to assert the indigent defendants' rights").

Finally, this case appears to be moot in light of the revision to the Ordinance. "The voluntary cessation of allegedly illegal activities will usually render a case moot . . . . Here, there is no reason to think that, having completely revised its regulations through proper procedures, the Town has any intention of returning to the prior regulatory regime." *Granite State Outdoor Advert., Inc. v. Town of Orange, Conn.*, 303 F.3d 450, 451-52 (2d Cir. 2002); *see also Murphy v. Hunt*, 455 U.S. 478, 481 (1982) ("[A] case becomes moot when the issues presented are no longer 'live[.]'") (citation and internal quotation marks omitted); *Native Vill. of Noatak v. Blatchford*, 38 F.3d 1505, 1510 (9th Cir. 1994) (noting in suit claiming law was void for vagueness, "[a]s a general rule, if a challenged law is repealed or expires, the case becomes moot").

For the reasons stated above, Plaintiff has not established that he suffered a concrete, actual, or imminent injury traceable to Defendants for which the court can provide redress. He therefore does not have standing to assert his claims. He also does not have standing to bring claims on behalf of a class. *See O'Shea*, 414 U.S. at 495 (holding that named plaintiffs lacked standing to bring class claims for injunctive relief, even though some had previously "suffered from the alleged unconstitutional practices," because "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief" and thus "[n]one of the named plaintiffs is identified as himself having suffered any injury in the manner specified" in the complaint). On this basis alone, Plaintiff's motion for leave to amend must be DENIED. To facilitate appellate review, the court examines Plaintiff's remaining proposed amendments.

### D. Whether Plaintiff May Amend the Complaint to Add State Treasurer Beth Pearce as an Individual Defendant.

Plaintiff proposes to amend his Complaint to include Defendant Pearce, alleging that she is liable "in [her] official capacit[y] and upon information and belief" for causing injury to Plaintiff because she "had the responsibility to accept revenues for . . . the State of Vermont . . . from legal sources, including, but not limited to, revenues from legally

15

issued speeding citations." (Doc. 33-1 at 8, ¶ 45.) Plaintiff asserts that Defendant Pearce "profited from illegal fines and must disgorge said profits[.]" *Id.* at 8, ¶ 46.

Accepting as true that Defendant Pearce has a responsibility to collect revenues from legal sources, Plaintiff fails to state a plausible claim for relief against her. Because the Citation was dismissed, Defendant Pearce did not accept revenues from any illegal source, and thus could not have profited from Plaintiff's payment of an illegal fine.[7] Plaintiff must allege enough facts to "nudge[] [his] claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007). "Draw[ing] on . . . judicial experience and common sense," the factual allegations as pled in the proposed Amended Complaint do not plausibly allege that Defendant Pearce engaged in any wrongdoing and thus cannot "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679; *see also Lucente*, 310 F.3d at 258 ("An amendment to a pleading is futile if the proposed claim could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).").

### E. Whether Plaintiff May Amend the Complaint to Add the Remaining Individual Defendants.

In addition to Defendant Pearce, Plaintiff moves to amend his Complaint to add three Town and Village employees: Defendant Swanson, Defendant Blish, and Defendant Coburn, alleging under 42 U.S.C. § 1983 that these Town and Village employees engaged in constitutional violations by illegally ticketing motorists, accepting illegal revenues from the tickets, and by issuing tickets that do not adequately reference the applicable statutory subsection or local ordinance. More specifically, Plaintiff alleges that Defendant Swanson failed to ensure that the Town and Village's ordinances were valid; that Defendant Blish failed to adequately train officers to enforce valid ordinances;

---

[7] Even if Plaintiff were able to satisfy the injury-in-fact requirement, the dismissal of the Citation also renders Plaintiff unable to "fairly trace[]" any of his injuries to Defendant Pearce's purported misconduct, depriving him of standing. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (alteration and citation omitted); *cf. Hu v. City of N.Y.*, 927 F.3d 81, 89 (2d Cir. 2019) (finding plaintiffs' injuries were fairly traceable to defendants' alleged actions where "the Amended Complaint supplements [] general allegations of harm with specific instances where the defendants' enforcement activities [injured] the plaintiffs").

and that Defendant Coburn failed to accept revenues for the Town and Village from "legal sources." (Doc. 33-1 at 8, ¶ 45.)

Because the Citation was dismissed, and Plaintiff's loss of the $120 filing fee was a self-inflicted injury, he cannot recover from the Town and Village's employees. The proposed addition of Defendants Swanson, Blish, and Coburn is thus futile. *See, e.g., U.S. Underwriters Ins. Co. v. Ziering*, 2010 WL 3419666, at *4 (E.D.N.Y. Aug. 27, 2010) ("An amendment to the pleadings may be deemed futile if, even once the proposed amendment is granted, the plaintiff would lack standing to bring the claim."); *Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 739 F. Supp. 804, 807 (S.D.N.Y. 1990) (denying leave to amend the Complaint to replead a specific claim on ground of futility where plaintiffs lacked standing). Plaintiff's desire to bring his claims on behalf of a class does not cure that defect. *See Zeigler v. New York*, 948 F. Supp. 2d 271, 285 (N.D.N.Y. 2013) (holding that a plaintiff could not bring § 1983 claims on behalf of a class where the amended complaint was "devoid of any actual or threatened injury to [the plaintiff] that is traceable to the alleged unlawful conduct" of a proposed defendant and because the plaintiff "cannot seek redress for injuries done to others").

### F. Whether Recovery of the $120 Filing Fee from the State Is Barred by Sovereign Immunity.

The State seeks denial of Plaintiff's motion for leave to amend on the further ground that Plaintiff's claim for return of the $120 filing fee against the State is barred by sovereign immunity. "Under the doctrine of sovereign immunity, claims against the State are barred unless immunity is expressly waived by statute." *Kane v. Lamothe*, 2007 VT 91, ¶ 6, 182 Vt. 241, 244, 936 A.2d 1303, 1306 (citation and internal quotation marks omitted). Vermont has consented to a limited waiver of its sovereign immunity through the State of Vermont Torts Claims Act ("VTCA"), 12 V.S.A. § 5601(a):

> The State of Vermont shall be liable for injury to persons or property or loss of life caused by the negligent or wrongful act or omission of an employee of the State while acting within the scope of employment, under the same circumstances, in the same manner, and to the same extent as a private person would be liable to the claimant except that the claimant shall

17

not have the right to levy execution on any property of the State to satisfy any judgment.

12 V.S.A. § 5601(a).

Although Plaintiff asserts that Defendant Pearce committed a wrongful act by collecting fines from illegal traffic citations, the VTCA specifically exempts "[a]ny claim for damages caused by the fiscal operations of any State officer or department" from its waiver of sovereign immunity. *See* 12 V.S.A. § 5601(e)(4). Moreover, the issuing of traffic citations and the collection of fees are government functions for which the State has not waived its sovereign immunity. *See Noble v. Office of Child Support*, 721 A.2d 121, 124 (Vt. 1998) (holding state child protective agency enforcement actions "are broadly discretionary, and serve a variety of state policies and interests wholly apart from the collection of debts," rendering the agency's duties "uniquely *governmental*") (emphasis in original); *Sabia v. State*, 669 A.2d 1187, 1191 (Vt. 1995) ("[T]he State remains immune for governmental functions for which no private analog exists.") (citation omitted); *cf. Sutton v. Vt. Reg'l Ctr.*, 2019 VT 71, ¶ 41, 2019 WL 4892199, at *9 (Vt. Oct. 4, 2019) (holding that plaintiff's claim against a government agency has a private analog where it "is emphatically *not* a claim against [the agency] for negligent enforcement of state laws or regulations within its purview") (emphasis in original). Against this backdrop, Plaintiff does not plausibly allege that he may recover from the State for fines Defendant Pearce may have collected from parties not before the court.[8]

---

[8] Congress did not abrogate all aspects of state sovereign immunity through its enactment of 42 U.S.C. § 1983. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) ("§ 1983 does not explicitly and by clear language indicate on its face an intent to sweep away the immunity of the States[.]"). In addition, "'[n]either a state nor its officials acting in their official capacities are 'persons' under § 1983.'" *Huminski v. Corsones*, 396 F.3d 53, 70 (2d Cir. 2005) (quoting *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989)).

18

## CONCLUSION

For the foregoing reasons, the court DENIES Plaintiff's motion for leave to amend because Plaintiff's proposed amendments are futile. (Doc. 33.)

SO ORDERED.

Dated at Burlington, in the District of Vermont, this 31st day of October, 2019.

Christina Reiss, District Judge
United States District Court